# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JAIME ALMAZAN,

        Defendant.

No. CR12-4021-MWB

**MEMORANDUM OPINION AND ORDER REGARDING SENTENCING**

_____

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   A. *The Charges and Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   B. *Offense Conduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   C. *Almazan's Personal Characteristics* . . . . . . . . . . . . . . . . . . . . . 4
   D. *Almazan's Sentencing* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   A. *The Methodology For Determination Of A Sentence* . . . . . . . . . . . . . 5
   B. *Application Of The Methodology To Almazan* . . . . . . . . . . . . . . . . 6
      *1.*   *Step 1: Determination of the guideline range* . . . . . . . . . . . 6
      *2.*   *Step 2: Determination of whether to depart* . . . . . . . . . . . . 8
      *3.*   *Prior policy objections to child pornography guidelines* . . . . 10
      *4.*   *Step 3: Application of § 3553(a) factors* . . . . . . . . . . . . . 12
          *a.*   *The nature and circumstances of the offense* . . . . . . 13
          *b.*   *Almazan's history and characteristics* . . . . . . . . . . . 16
          *c.*   *The need for the sentence imposed* . . . . . . . . . . . . 18
          *d.*   *The kinds of sentences available* . . . . . . . . . . . . . 20
          *e.*   *Any pertinent policy statement* . . . . . . . . . . . . . . 21
          *f.*   *The need to avoid unwarranted disparities* . . . . . . . . 21
          *g.*   *The need to provide restitution* . . . . . . . . . . . . . . 22

   *h.*  *Summary of § 3553(a) factors* . . . . . . . . . . . . . . . . 22

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

   Defendant Jaime Almazan came before me for sentencing on November 30, 2012, after being convicted by a jury of producing child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e). I previously categorically rejected one child pornography sentencing guideline, U.S.S.G. § 2G2.2, in *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009), and another, U.S.S.G. § 2G2.1, in *United States v. Jacob*, 631 F. Supp.2d 1099 (N.D. Iowa 2009). Almazan moved for a downward variance from his advisory guideline sentencing range based on "the nature and circumstances of the offense and the history and characteristics of this particular defendant." Defendant's Br. at 2. Almazan argued that the advisory guideline sentencing range in this case is excessive under 18 U.S.C. § 3553(a), and requested that I vary down to the statutory mandatory minimum sentence of 180 months imprisonment. While I continue to conclude that U.S.S.G. § 2G.2.1 can be rejected on categorical policy grounds, in considering the seriousness and circumstances of Almazan's crime, I did not find that application of that guideline, here, yields an excessive sentence, but concluded that a sentence within the advisory guideline sentence range was "sufficient, but not greater than necessary" to accomplish the goals of sentencing, in light of all of the pertinent factors. *See* 18 U.S.C. § 3553(a). Accordingly, I denied Almazan's motion for a downward variance. I now enter this written explanation

of my rationale for a sentence tailored to Almazan's circumstances in light of the applicable guidelines and 18 U.S.C. § 3553(a) factors. Unfortunately for Jamie Almazan, this resulted in a sentence at the statutory maximum of 360 months.

## I. INTRODUCTION

### A. The Charges and Trial

In a single-count Indictment returned on February 23, 2012, defendant Jaime Almazan was charged with producing child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e). Trial commenced on September 21, 2012. On September 24, 2012, the jury returned a verdict in which it found Almazan guilty of the charged offense. They did so in the quickest verdict I have ever had as a federal district court judge-less than 20 minutes.

### B. Offense Conduct

Between July 2011 and October 2011, Almazan, who was 45-46 years old, engaged in a sexual relationship with his 12-13 year old niece, A.E. Almazan lived in the same Storm Lake, Iowa, residence as A.E., along with M.C. (Almazan's sister and A.E.'s mother), A.E.S. (A.E's father), A.E.J (A.E.'s 19 year old brother), and S.E. (A.E.J..'s wife). Almazan performed sex acts on A.E. on several occasions. Using his Apple iPhone, Almazan photographed A.E.'s naked genitalia, and made a video of himself performing oral sex on A.E. in his bedroom. Almazan also requested A.E. to take photographs of her genitalia using his iPhone. In response, A.E. photographed her genital area while she was wearing underwear. Almazan coerced A.E.'s participation in these events through threats against her and her family, and by threatening to distribute the photographs by placing them on the internet.

3

Almazan's actions were discovered by A.E.J. on October 11, 2011. Almazan had previously asked A.E.J. to install software that would permit Almazan to save files to a secure location which would only be accessible to Almazan. On October 11, 2011, Almazan asked A.E.J. to save music on Almazan's iPhone. While doing this, A.E.J. synched his own laptop computer with Almazan's iPhone, causing files from the iPhone to download onto the laptop. After this process was completed, AE.J. found sexually explicit photographs of A.E. on his laptop that had been copied from the iPhone. Agents from the Iowa Department of Criminal Investigation ("DCI") subsequently examined Almazan's iPhone. The DCI agents found a secured folder insider the iPhone containing two copies of the video showing Almazan performing oral sex on A.E., and photograph's of A.E.'s genital region, both clothed and unclothed.

### C. Almazan's Personal Characteristics

This description of Almazan's personal characteristics is drawn from the Presentence Investigation Report ("PSIR").

Almazan is a 47 year old citizen of Mexico. He grew up in Mexico, one of eleven children, where his father is an electrician and his mother a housewife. He completed nine years of school in Mexico. He is a permanent resident alien, having entered the United States in 1988. He initially lived in North Carolina and worked as a farmhand in the tobacco industry. He subsequently moved for employment several times. In 2008, Almazan moved to Storm Lake for better employment, working as a packinghouse production worker. He resided with his sister, Rebecca, and her family until his arrest for the current offense.

### D. Almazan's Sentencing

Almazan came on for sentencing on November 30, 2012. Prior to that hearing, on November 20, 2012, Almazan filed a Motion for Downward Variance and supporting brief, asserting that the court should disregard the advisory guideline sentence calculation as inconsistent with the directives of 18 U.S.C. § 3553(a) and that a sentence at the statutory mandatory minimum of 180 months is appropriate. Almazan argued that a number of factors warrant a downward variance. Specifically, he pointed to his age, the duration of his conduct, his relatively low educational level, his future deportation, his lack of interpersonal support or relationships, lack of any significant criminal history, the conditions he will face in prison, his minimal command of the English language, his limited vocational skills with minimal employment history, and that he comes from a large family with his parents and majority of siblings living in Mexico. The prosecution filed a timely resistance to Almazan's motion. The prosecution argued that the factors under § 3553(a) do not support a variance.

At the sentencing hearing, the prosecution was represented by Assistant United States Attorney Timothy Duax, and Almazan was represented by Assistant Federal Defender Robert A. Wichser. Neither party presented any testimony nor offered any exhibits. The parties agreed that the only outstanding issue was Almazan's request for a downward variance.

## II. LEGAL ANALYSIS

### A. The Methodology For Determination Of A Sentence

The Eighth Circuit Court of Appeals has repeatedly reiterated the following three-step methodology for determination of a defendant's sentence:

> The three steps in the post-*Booker* sentencing process are: (1) "to determine the [initial] advisory guideline sentencing range," (2) to determine "any appropriate departures [upward or downward] from the guidelines[,]" and (3) to decide whether "to vary from the advisory guideline range based on the factors set forth in § 3553(a), so long as such a variance is reasonable."

*United States v. VandeBrake*, 679 F.3d 1030, 1039 n.7 (8th Cir.) (quoting *United States v. Shannon*, 414 F.3d 921, 923 (8th Cir. 2005)), *petition for cert. filed*, (U.S. Oct. 18, 2012) (No.12-488); *see United States v. Mireles*, 617 F.3d 1009, 1012 (8th Cir. 2010); *United States v. Roberson*, 517 F.3d 990, 993 (8th Cir. 2008); *United States v. Miller,* 479 F.3d 984, 986 (8th Cir. 2007); *United States v. Rivera*, 439 F.3d 446, 447 (8th Cir. 2006);*United States v. Haack,* 403 F.3d 997, 1002-03 (8th Cir. 2005). Although "a court of appeals may apply a presumption of reasonableness when conducting substantive review of a sentence within the advisory range, 'the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.'" *United States v. Henson*, 550 F.3d 739, 740 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). The Supreme Court has emphasized this point, noting that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (*per curiam*) (emphasis in the original).

## B. Application Of The Methodology To Almazan

### 1. Step 1: Determination of the guideline range

The first step in the sentencing process is to determine the proper guideline range for the defendant's sentence. *See United States v. Lozoya*, 623 F.3d 624, 625 (8th Cir.

2010) ("In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines."); *see also Mireles*, 617 F.3d at 1012; *Roberson*, 517 F.3d at 993; *Rivera*, 439 F.3d at 447. All guideline calculations were made using the 2012 Sentencing Guidelines and the 2012 Sentencing Table ("the Guidelines").

The parties agree, and I find, that the base offense level for producing child pornography, pursuant to U.S.S.G. § 2G2.1(a) is 32. The parties also agree, and I find, that, pursuant to U.S.S.G. § 2G2.1(b)(1)(B), the base offense level should be increased two levels for an offense involving a minor who had attained the age of 12 but not yet attained the age of 16. This increase is justified because A.E. was 12 or 13 years old at the time of Almazan's conduct here. The parties further agree, and I find, that, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), the base offense level should be increased two levels for an offense involving the commission of a sexual act or sexual contact. This increase is warranted by the video of Almazan performing oral sex on A.E. in his bedroom. The parties also agree, and I find, that, pursuant to U.S.S.G. § 2G2.1(b)(5), the base offense level should also be increased two levels for an offense involving a parent, relative or legal guardian of a minor. This increase is warranted because Almazan is A.E.'s uncle. Finally, the parties agree, and I find, that, pursuant to U.S.S.G. § 4B1.5(b)(1), the base offense level should be increased five levels because his offense was a covered sex crime, neither §§ 4B1.1 (career offender) or 4B1.5(a) (repeat sexual offender against minors) apply, and he engaged in a pattern of activity involving prohibited sexual conduct. This increase is justified by Almazan's performing sex acts on A.E. on several occasions. Thus, the adjusted offense level for Almazan's offense is 43. The parties also agree, and I find, that Almazan's criminal history category is I, with one criminal history point for a state conviction for possessing less than 20 grams of marijuana. The applicable 2012

Sentencing Table ends at offense level 43, so that Almazan's resulting advisory guideline sentence is life imprisonment. However, because the maximum statutorily authorized sentence of 30 years is less than the minimum of the applicable advisory guideline range, the Guideline sentence is 360 months imprisonment. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

### 2. *Step 2: Determination of whether to depart*

I turn next to the second step of the sentencing methodology, which involves determination of whether any departure is appropriate.[1] *See VandeBrake*, 679 F.3d at 1039 n.7. At this stage, the court should initially "decide if any applicable Guidelines

---

[1]As the Eighth Circuit Court of Appeals has explained:

> "'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States,* 553 U.S. 708, 128 S. Ct. 2198, 2202, 171 L. Ed. 2d 28 (2008). A variance, on the other hand, is a "non-Guidelines sentence[ ] based on the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Solis-Bermudez,* 501 F.3d 882, 884 (8th Cir. 2007).

*Mireles*, 617 F.3d at 1012 n.2; *see Lozoya*, 623 F.3d at 626 (noting that, "[a]s opposed to a 'departure,' a 'variance' refers to a 'non-Guidelines sentence' based on the factors enumerated in section 3553(a)."); *United States v. Solis-Bermudez,* 501 F.3d 882, 884 (8th Cir. 2007) (explaining that departures are provided for in Chapter Five and Section 4A1.3 of the Guidelines).

provisions permit a traditional 'departure' from the recommended sentencing range."

*Lozoya*, 623 F.3d at 625; *see Mireles*, 617 F.3d at 1012.

In discussing the propriety of departures generally, the Eighth Circuit Court of Appeals has instructed:

> Departures are appropriate if the sentencing court finds that there exists an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." U.S.S.G. § 5K2.0. The guidelines provide that sentencing courts [are] to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, a court may consider whether a departure is warranted.
> U.S.S.G. § 1A1.1, cmt. n. 4(b).

*United States v. Chase,* 451 F.3d 474, 482 (8th Cir. 2006). A defendant bears the burden to prove that a downward departure is appropriate. *See United States v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009); *United States v. Lussier,* 423 F.3d 838, 843 (8th Cir. 2005). The decision whether to depart from the advisory Sentencing Guidelines rests within the sound discretion of the district court. *See Mireles*, 617 F.3d at 1015; *United States v. Jones*, 596 F.3d 881, 893 (8th Cir. 2010); *United States v. Billue*, 576 F.3d 898, 905 (8th Cir.2009); *Torres*, 563 F.3d at 734. However, the Supreme Court has instructed that: "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases. . . ." *Koon v. United States,* 518 U.S. 81, 98 (1996). Thus, a court must "carefully articulate the reasons for departure,

particularly where the waters are unchartered." *United States v. Reinke,* 283 F.3d 918, 925-26 (8th Cir. 2002).

The prosecution has not sought an upward departure and Almazan has not sought a downward departure. I do not believe that there are any sound bases for either a traditional upward or downward departure, that is, that there are features of Almazan's case that potentially take it outside the Guidelines "heartland" and make it a special or unusual case warranting a departure provided for in Chapter Five or § 4A1.3 of the Guidelines. Therefore, I find no departures are warranted.

### 3. *Prior policy objections to child pornography guidelines*

As I mentioned above, I have categorically rejected both U.S.S.G. § 2G2.2, *see Beiermann*, 599 F. Supp. 2d at 1107-08, and U.S.S.G. § 2G2.1, see *Jacob*, 631 F. Supp.2d at 1115. Because I have looked to those decisions as relevant comparator cases, I will briefly review those two decisions before I turn to consider the § 3553(a) factors.

In *Beiermann*,

> I joined several of my brethren in finding that the guideline for possessing, receiving, transporting, shipping, and soliciting child pornography, U.S.S.G. § 2G2.2, which is the result of congressional mandates, not the Commission's exercise of its institutional expertise and empirical analysis, is entitled to considerably less deference than other guidelines that are based on the Commission's exercise of its expertise and analysis. *Id.* at 1100-06. My first specific policy objection to § 2G2.2 was that it does not reflect empirical analysis, but congressional mandates that interfere with and undermine the work of the Sentencing Commission. My second policy objection was that § 2G2.2 impermissibly and illogically skews sentences for even "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between least and worst

offenders. I specifically noted that this objection was based on the imposition of level enhancements, some quite extreme, based on circumstances that appear in nearly every child pornography case: using the internet, amassing numerous images, which is made particularly easy by the internet; the presence of video clips counted as 75 images each; the presence of images of prepubescent minors and violence, which is broadly defined to include a prepubescent minor engaged in a sex act; and some "distributing" in return for other images. *Id.* at 1105. Furthermore, I found that I could go one step further than rejecting the application of the guideline in a particular case and, instead, could reject § 2G2.2 on categorical, policy grounds, even in a "mine-run" case. *Id.* at 1105-06.

*Jacob*, 631 F. Supp. 2d at 1107-08.

Subsequently, in *Jacob*, I found that § 2G2.1 suffered from some of the same flaws that I found warranted categorical rejection of § 2G2.2. *Id.* at 1115. Specifically, I categorically rejected § 2G2.1 because it did not reflect empirical analysis, but congressional mandates that interfere with and undermine the work of the Sentencing Commission. *Id.* at 1114. I also rejected § 2G.2.1 because it recommended enhancements that did not distinguish between the least and worst offenders. Rather, § 2G2.1 recommended enhancements for conduct present in nearly every case which it applied:

a two- or four-level enhancement in § 2G2.1(b)(1) based on the age of the minor involved; a two-level enhancement in § 2G2.1(b)(3) if the offense involved distribution; a four-level enhancement in § 2G2.1(b)(4) if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, not applicable here only because of the inadequacy of proof that the male penis shown in one image with an underage female, which was distributed to the minor, could not be conclusively shown to be the penis of an adult male; and the two-level increase in § 2G2.1(b)(6)(B) for use of

a computer or an interactive computer service to entice the minor.

*Id.* at 1115. I alternatively concluded that, even if I did not reject § 2G2.1 on categorical policy grounds, in every case, its application yielded an excessive sentence in that case. *Id.*

Having rejected § 2G2.1 on policy grounds, I followed the approach I first adopted in *Beiermann*:

> the appropriate, reasoned alternative to application of the flawed guideline is for the sentencing judge to begin with the base offense level, which reflects the mandatory minimum statutory sentence, U.S.S.G. § 2G2.2(a) or U.S.S.G. § 2G2.1(a), and then to consider appropriately identified factors, but to give those factors more appropriate weight in the determination of a particular defendant's sentence. *Beiermann*, 599 F. Supp. 2d at 1107. As I explained in *Beiermann*, such "cherry picking" and reweighing of factors from the guideline is appropriate—indeed, totally consistent with the exercise of my discretion to apply the 18 U.S.C. § 3553(a) factors—because it reflects the extent of my categorical and policy disagreement with the guideline. *Id.*

*Jacob*, 631 F. Supp. at 1115. I will apply the same approach here.

### 4.    *Step 3: Application of § 3553(a) factors*

The third step in the sentencing methodology requires that I apply the § 3553(a) factors to determine whether to impose a guideline or non-guideline sentence. *See Jacob*, 631 F. Supp.2d at 1115; *Beiermann*, 599 F. Supp. 2d at 1094-95. Section 3553(a) lists the following factors that I must consider in determining a particular sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for—(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7) (line breaks omitted).

After balancing the § 3553(a) factors, I find that only a sentence at the statutory maximum of 360 months, for this defendant, is "sufficient, but not greater than necessary" to accomplish the goals of sentencing and completely appropriate. *See* 18 U.S.C. § 3553(a). In considering the § 3553(a) factors, "[a] district court is not required to recite each of the sentencing factors under 18 U.S.C. § 3553(a), as long as the record makes clear that they were considered." *United States v. Powills*, 537 F.3d 947, 950 (8th Cir. 2008); *see United States v. Gasaway*, 684 F.3d 804, 807-08 (8th Cir. 2012) ("'The district court is presumed to know the law in regard to sentencing and need not recite each factor to be upheld. When we review the § 3553(a) factors, we will look to the entire record.'") (quoting *United States v. Keating,* 579 F.3d 891, 893 (8th Cir. 2009) (internal citation omitted)). Nevertheless, I will expressly consider each of the § 3553(a) factors in turn.

### a.    *The nature and circumstances of the offense*

The first § 3553(a) factor requires me to consider "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). I recounted above the nature and circumstances

of Almazan's offense. In addition to producing the images of A.E., Almazan repeatedly sexually molested A.E. over a period of months and abused his position of trust as A.E.'s uncle. Thus, the gravity of the harm done to A.E. by Almazan's actions was magnified by the position of authority and trust Almazan had and used to perpetrate his crime. Almazan's actions stole A.E.'s innocent childhood, were perpetrated by the use of serious threats, and, based on my experience, will likely cause A.E. untold severe psychological and emotional problems for most of her life.

No one doubts that the production of child pornography is an exceptionally serious crime whose victims suffer permanent harm. The United States Supreme Court has recognized that "[c]hild pornography harms and debases the most defenseless of our citizens." *United States v. Williams,* 553 U.S. 285, 307 (2008); *see Osborne v. Ohio,* 495 U.S. 103, 109 (1990) ("'It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling' . . . The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.'") (quoting *New York v. Ferber,* 458 U.S. 747, 756–58 (1982)); *United States v. Hotaling,* 634 F.3d 725, 728 (2d Cir. 2011) ("The Supreme Court has long recognized that the government has a compelling interest in protecting minors from becoming victims of child pornography because of the physiological, reputational and emotional harm that distribution of such material imposes on them.") (citing *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 249 (2002))). Almazan deserves a punishment that reflects the seriousness of the crime he has committed.

Unlike the defendant in the typical child pornography case I see, Almazan's criminal actions did not result from his impulsive click of a mouse, but required him to engage in

considerable time, effort, and planning to groom, cajole, and coerce his victim. Also, unlike the defendant in *Jacobs*, whose guideline sentence was subject to the enhancement for the number of images in U.S.S.G. § 2G2.2(b)(7), no such enhancement is at issue here. Moreover, with once exception, the sentencing enhancements in U.S.S.G. § 2G2.1, which I was critical of in *Jacobs*, because they did not distinguish between the least and worst offenders but were instead present in nearly every case, are not present in Almazan's case. While Almazan is subject to the two level enhancement in § 2G2.1(b)(1), based on A.E.'s age, he is not subject to the two-level enhancement in § 2G2.1(b)(3) for an offense involving distribution, the four-level enhancement in § 2G2.1(b)(4) for an offense involving material that portrays sadistic or masochistic conduct or other depictions of violence, or the two-level increase in § 2G2.1(b)(6)(B) for using a computer or an interactive computer service to entice the minor. *See Jacobs*, 631 F. Supp. at 1115.

The Guideline enhancements that Almazan is subject to are not excessive under the facts of this case. The § 2G2.1(b)(1) adjustment for victims under fifteen years properly accounted for the particularly vulnerable state that A.E. was in, given her age at the time of the abuse. Likewise, the two level enhancement for a sexual act or sexual contact, pursuant to § 2G2.1(b)(2)(A)), properly accounts for the sexual acts perpetrated by Almazan. Similarly, the two level enhancement because Almazan was a relative of A.E., pursuant to § 2G2.1(b)(5), takes into account the aggravating nature of Almazan's violation of his position of trust and authority to sexually abuse A.E. Finally, a five level enhancement for engaging in a pattern of sexual abuse, pursuant to § 4B1.5(b), is appropriate and takes into account the severity of Almazan's actions in repeatedly sexually abusing A.E. over a period of months. Thus, I find that the nature and circumstances of Almazan's offense warrant a sentence at the statutory maximum of 360 months imprisonment.

### b.    *Almazan's history and characteristics*

The first § 3553(a) factor also requires that I consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). I described above Almazan's history and characteristics. In this regard, I find Almazan's lack of any significant criminal history to be mitigating. Not only does he have no significant criminal history, as in *Beiermann*, there is no prior history of sexual offenses, let alone offenses involving children, and no prior offenses such as voyeurism or loitering that might be seen as precursors to more serious sexual offenses. *See Beiermann*, 599 F. Supp. 2d at 1110. However, there is no evidence of remorse in the record nor any evidence that Almazan recognizes or appreciates the damage that his actions have caused A.E. and his own family. Almazan's lack of remorse is an aggravating factor which outweighs his prior lack of a significant criminal history. *See United States v. Overbey*, 696 F.3d 702, 706 (8th Cir. 2012) (affirming upward variance based, *inter alia*, on defendant's lack of remorse); *see also United States v. Broxmeyer*, 699 F.3d 265, 295 (2nd Cir. 2012) (same); *United States v. Douglas*, 569 F.3d 523, 527-28 (5th Cir. 2009) (same).[2]

I carefully considered Almazan's argument that his age is a sufficiently "mitigating" factor warranting a downward variance. He argues that his age is an accurate predictor of his lower risk of recidivism and cites a Sentencing Commission study. *See* United States Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* 12 n.16, Ex. 9 (2004). There is a significant flaw in Almazan's argument. He fails to take into account that sex offenders

---

[2]I recognize a defendant's Fifth Amendment right to remain silent at trial and sentencing, *see Mitchell v. United States*, 526 U.S. 314, 326-27 (1999), and have not considered in any way Almazan's silence in determining his sentence. However, there are other ways for the record to reflect remorse. No such evidence exists here.

have a higher incidence of recidivism than typical offenders. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (finding that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault."); *see also United States v. Pugh,* 515 F.3d 1179, 1201 (11th Cir. 2008) (recognizing that "child sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). Indeed, in establishing a comprehensive national system for registration of sex offenders, Congress recognized that sex offenders are unique because they have higher rates of recidivism than other offenders. *See* H.R.Rep. No. 109-218, pt. 1, at 22-23 (2005) (finding that "[s]ex offenders have recidivism rates that often exceed those of other criminals"). Moreover, Almazan has not offered any evidence that he does not suffer from any paraphilias and is not likely to engage in future acts of sexual abuse. As a result, I am unable to draw the conclusion that Almazan is a lower risk of recidivism due to his age. In virtually all cases where I have been able to make a finding of fact that a defendant is a low risk of recidivism, this finding has been based on unrebutted expert testimony by a highly qualified forensic psychiatrist who examined and tested the defendant and rendered a detailed pre-sentencing report and has been called as a witness, and been subject to the crucible of cross-examination by an AUSA and further questioning by me. No expert opinions were offered in this case.

Contrary to Almazan's contention, I find the age that Almazan committed his crime increases the egregiousness of it. Unlike the defendant in *Jacob*, who lacked maturity and judgment because of his youth, Almazan is a mature man with the judgment that comes with age. His actions in this case are indicative of a deep-seated pedophilia. Thus, I

conclude that a sentence at the statutory maximum would not be disproportionately harsh compared to Almazan's criminal conduct and history.

Almazan also seeks a downward variance based on the limited duration of his conduct, his relatively low educational level, his future deportation, his lack of interpersonal support or relationships, the conditions he will face in prison, his minimal command of the English language, his limited vocational skills with minimal employment history, and that he comes from a large family with his parents and majority of siblings living in Mexico.[3] I have considered each of these factors and conclude that, to the extent they are mitigating, these factors, individually and collectively, are outweighed by other 3553(a) considerations, including the horrific nature of the crime and the need to impose just punishment, and thus do not warrant a downward variance.

### c. *The need for the sentence imposed*

The second § 3553(a) factor is "the need for the sentence imposed," § 3553(a)(2), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training" or other care or treatment, § 3553(a)(2)(D). As I noted in *Beiermann*, "even those who find that the Sentencing Guideline for child pornography offenses is flawed agree that 'child pornography is a pernicious evil.'" *See*

---

[3]Although Almazan deems his conduct to be of such limited duration as to be worthy of a downward variance, I consider his repeated acts of sexual molestation over a period of several months to be an aggravating factor and note that his conduct garnered him a five level enhancement for engaging in a pattern of sexual abuse, pursuant to § 4B1.5(b).

*Beiermann*, 599 F. Supp. 2d at 1111 (quoting Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (hereinafter, Stabenow, *Deconstructing the Myth*) 31 (July 3, 2008) (available at mow.fd.org/3 % 20July % 202008 % 20Edit.pdf), and citing other authorities). The same must certainly be said of Almazan's offense which involved his repeated sexual molestation of A.E. over a period of months. Thus, I have no trouble concluding that a very substantial term of imprisonment is required in this case.

With respect to adequate deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), as I noted in *Beiermann*, 599 F. Supp. 2d at 1112, my learned colleague from the Southern District of Iowa, Judge Pratt, wisely considered both "specific deterrence" of the particular defendant and "general deterrence" of other offenders who might pay any attention to any sentence imposed for a child pornography (or child exploitation) offense. *See United States v. Shipley*, 560 F. Supp. 2d 739, 745 (S.D. Iowa 2008). As to specific deterrence, he considered the defendant's lack of criminal history and the shame that the defendant felt as mitigating the necessary term of imprisonment, while observing that the sentence imposed should be adequate to deter others, if they were capable of being deterred. *Id.* Here, I find that Almazan's lack of significant criminal history is outweighed by the fact that, as a convicted sex offender, he is more likely to reoffend when he reenters society. *See McKune*, 536 U.S. at 33. Thus, specific deterrence calls for a significant term of imprisonment necessary to deter him from future conduct. Moreover, the term of imprisonment should be sufficiently substantial to deter others who are or might become engaged in such conduct, if such persons are capable of being deterred. *Shipley*, 560 F. Supp. 2d at 745. Accordingly, I conclude that a term of imprisonment at the statutory maximum sentence, as already suggested by other § 3553(a) factors, is also appropriate on this ground.

With respect to protection of the public from further crimes from Almazan, *see* 18 U.S.C. § 3553(a)(2)(C), "[a]dequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877–78 (7th Cir. 2007)). Almazan's conduct here inflicted enormous, and possibly permanent, harm on A.E. Given the magnitude of the harm that will occur if Almazan commits additional sexual crimes against children in the future, a term of imprisonment less than the statutory maximum does not afford adequate protection to society.

Similarly, a sentence at the statutory maximum is likely to afford Almazan the necessary treatment, including sex offender treatment, that he requires and may afford him educational opportunities to improve his employability. *See* U.S.S.G. § 3553(a)(2)(D) (the court should consider the sentence necessary "to provide the defendant with needed educational or vocational training" or other care or treatment).

Therefore, I conclude that this factor calls for a sentence at the statutory maximum.

### d. *The kinds of sentences available*

The third § 3553(a) factor is "the kinds of sentences available," *see* 18 U.S.C. § 3553(a)(3), and the fourth is "the kinds of sentence and the sentencing range established" for similar offenses. 18 U.S.C. § 3553(a)(4). The applicable statutes for production of child pornography provide for imprisonment from 15 to 30 years. The advisory guideline sentence for Almazan calls for a life sentence. Similarly, other federal statutes involving harm to children carry hefty sentences. *See* 18 U.S.C. § 3559(e)(1) ("A person who is convicted of a [f]ederal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed); 18 U.S.C. § 2252A(b)(1) ( mandatory minimum

sentence for receipt and distribution of child pornography is five years and the maximum is twenty years); 18 U.S.C. § 2252(b)(1) (possession of child pornography carries a maximum sentence of ten years for a first offender). I find that a substantial period of imprisonment is called for in this case, in light of the kinds of sentences available under the applicable statutory and Guideline provisions.

### e. *Any pertinent policy statement*

The fifth § 3553(a) factor is "any pertinent policy statement." 18 U.S.C. § 3553(a)(5). As in *Beiermann* and *Jacobs*, I conclude that the pertinent policy statement here is that embodied in the "parsimony provision" of the federal sentencing statute, 18 U.S.C. § 3553(a), which directs me to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Jacobs*, 631 F.3d at 1120-21; *Beiermann*, 599 F. Supp. 2d at 1114. Adhering to this arching principle of federal sentencing, I find that a sentence at the statutory maximum is sufficient, but not greater than necessary, to achieve the goals of sentencing. I further find that a lower sentence would not achieve this sentencing principle.

### f. *The need to avoid unwarranted disparities*

The sixth § 3553(a) factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In *Beiermann*, I noted that a concomitant of this principle is the need to avoid *unwarranted similarities* among defendants who are *not* similarly situated. *See Beiermann*, 599 F. Supp. 2d at 1115-16 (citing, *e.g.*, *Gall*, 128 S. Ct. at 600, which states, "[I]t is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated," and there was no procedural error in doing so).

In *Beiermann*, I imposed a 90-month sentence for child pornography offenses after categorically rejecting § 2G2.2, and in *Jacobs*, I imposed two 151-month sentences for enticing minors to engage in sexual activity and a 78-month sentence for transporting child pornography, with all three sentences to be served concurrently. With *Beiermann* and *Jacobs* as the comparators, and the guidance provided by considering other § 3553(a) factors, I believe that a sentence of 360 months is appropriate, because, on the "continuum" of child pornography and child exploitation cases, Almazan's conduct is strikingly more serious and more culpable than the conduct of either defendant in *Beiermann* or *Jacobs*. Here, Almazan used his position of trust in his sister's household to sexually abuse his niece on multiple occasions over a period of months. He digitally recorded this abuse and went so far as to coerce A.E. to take photographs of her genital area using his iPhone. He also recorded a video on his iPhone of him having oral sex with A.E. Thus, a sentence at the statutory maximum will not result in an unwarranted sentencing disparity.

### g. *The need to provide restitution*

The final § 3553(a) factor is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As in *Beiermann* and *Jacobs*, I find that this factor does not offer any insight as to the appropriate sentence. *Jacobs*, 631 F.3d at 1123; *Beiermann*, 599 F. Supp. 2d at 1117.

### h. *Summary of § 3553(a) factors*

After considering all the factors in 18 U.S.C. § 3553(a), I found that a term of 360 months imprisonment and supervised release for life was sufficient but not greater than necessary. As discussed, Almazan's offense is very serious. I noted the need to afford adequate deterrence to such conduct, and concluded that this sentence is sufficient but not greater than necessary to provide both specific deterrence to Almazan and general

deterrence. I denied Almazan's Motion for Downward Variance, finding that none of the factors Almazan cited in his brief warranted such a variance in this case.

### III.  CONCLUSION

For all of the reasons discussed in detail above, I sentenced defendant Almazan to 360 months imprisonment, supervised release for life, and a $100 special assessment.

**IT IS SO ORDERED.**

**DATED** this 3rd day of December, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA